UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JAMES NOLAN,

                         Plaintiff,                                **MEMORANDUM AND ORDER**
                                                      11 CV 5827 (DRH) (AKT)

                   - against -

ANDREW M. CUOMO, as Governor of the
State of New York, SEAN BYRNE, as Acting
Commissioner of the New York State Division
of Criminal Justice Services, THOMAS SPOTA,
as Suffolk County District Attorney, and
STATE OF NEW YORK,

                         Defendants.
-----------------------------------------------------------X
**APPEARANCES:**

**JOHN RAY & ASSOCIATES**
Attorneys for Plaintiff
122 North Country Road
P.O. Box 5440
Miller Place, New York 11764
By:    John W. Ray, Esq.

**ERIC T. SCHNEIDERMAN**
**ATTORNEY GENERAL OF THE STATE OF NEW YORK**
Attorneys for Defendants Andrew M. Cuomo, Sean Byrne, and State of New York
300 Motor Parkway
Suite 205
Hauppauge, New York 11788
By:    Susan M. Connolly, Assistant Attorney General

**DENNIS M. COHEN, SUFFOLK COUNTY ATTORNEY**
Attorneys for Defendant Thomas Spota
100 Veterans Memorial Highway
Hauppauge, New York  11788
By:    Rudolph M. Baptiste, Assistant County Attorney

**HURLEY, Senior District Judge:**

Plaintiff James Nolan commenced this action alleging defendants Andrew M. Cuomo, as Governor of the State of New York ("Cuomo"), Sean Byrne, as Acting Commissioner of the New York State Division of Criminal Justice Services ("Byrne"), and the State of New York (collectively, the "State Defendants"), along with Thomas Spota, as Suffolk County District Attorney ("Spota"), violated his constitutional rights by denying him the opportunity to be "de-classified" as a registered sex offender under the New York State Sex Offender Registration Act. (Compl. ¶ 19.)  Plaintiff asserts that defendants' actions have violated his 14th Amendment due process and equal protection rights, and seeks money damages and injunctive relief.

Presently before the Court are: (1) the State Defendants' motion, made pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), and (2) Spota's motion, made pursuant to Rules 12(b)(5) and 12(b)(6), both seeking dismissal of the Complaint.  For the reasons set forth below, both motions are granted and the Complaint is dismissed.

## BACKGROUND

The following facts are drawn from the Complaint and the exhibits attached thereto.

### The Parties

Plaintiff, a resident of Suffolk County, New York (Compl. ¶ 1), was convicted, on August 19, 1998, of the crime of Attempted Rape in the Third Degree, a violation of New York Penal Law §§ 110.00, 130.25 (*id.* ¶ 9 & Ex. D at 1).  As a result of that conviction, and as discussed more fully below, plaintiff is registered as a sex offender pursuant to the New York State Sex Offender Registration Act, N.Y. Corr. Law § 168 *et seq.* ("SORA").  (Compl. ¶ 9 & Ex. D at 1.)

Defendant Andrew M. Cuomo is the Governor of New York State.  Sean Byrne was, at

2

all relevant times, the Acting Commissioner of the New York State Division of Criminal Justice

Services ("DCJS").  Thomas Spota was, at all relevant times, the District Attorney for Suffolk

County, New York.

***Plaintiff's Criminal Proceedings and Subsequent Amendments to SORA***

As noted above, on August 19, 1998, plaintiff was convicted of Attempted Rape in the

Third Degree, was sentenced thereafter to a period of incarceration, and was designated as a "sex

offender" under SORA.  (Compl. ¶ 9 & Ex. D at 1.)[1]  After a subsequent hearing, in May 1999

plaintiff was classified as a Level 2 sex offender and registered as a sex offender in New York.[2]

(Compl., Ex. A (Verified Pet. ¶ 16).)  At that time, SORA required Level 2 sex offenders[3] to

register with the DCJS annually for a period of ten years from the date of initial registration.

---

[1]       SORA provides that when an individual is convicted of certain crimes, the court
overseeing that individual's criminal proceedings must "certify that the person is a sex offender
and shall include the certification in the order of commitment, if any, and judgment of
conviction."  N.Y. Corr. Law § 168-d(1)(a).

[2]       SORA established a "board of examiners of sex offenders," comprised of five
members appointed by the governor, each of whom is an "expert[ ] in the field of the behavior
and treatment of sex offenders."  N.Y. Corr. § 168-l(1).  Within sixty days prior to the discharge,
parole, or release of a sex offender, the board must make a confidential recommendation to the
sentencing court "providing for one of [ ] three levels of notification [i.e., whether a sex offender
will receive a Level 1, 2 or 3 designation] depending upon the degree of the risk of re-offense by
the sex offender."  N.Y. Corr. § 168-l(6).  (*See* Footnote 3, below.)  After receiving the board's
recommendation, the sentencing court must make a "determination with respect to the level of
notification" thirty calendar days prior to the sex offender's discharge, parole, or release.  N.Y.
Corr. Law § 168-n(2).  The sex offender has the right to request a hearing prior to the sentencing
court's determination.  *See* N.Y. Corr. Law § 168-n(3).

[3]       A Level 1 designation, the lowest level, is assigned to a sex offender "[i]f the risk
of repeat offense is low."  N.Y. Corr. Law § 168-l(6)(a).  A Level 2 designation is assigned "[i]f
the risk of repeat offense is moderate," and a Level 3 designation is assigned "[i]f the risk of
repeat offense is high and there exists a threat to the public safety."  N.Y. Corr. Law § 168-l(6)(b)
& (c).

3

N.Y. Corr. Law § 168-h (McKinney 1995).[4]  SORA also provided, however, that "[a]ny sex offender required to register pursuant to this article may be relieved of any further duty to register upon the granting of a petition for relief by the sentencing court."  N.Y. Corr. Law § 168-o (McKinney 1995).  Upon his release from incarceration, plaintiff enrolled as a student in the State of Rhode Island and moved to that state.  (Compl., Ex. D at 1.)  He subsequently registered as a sex offender in Rhode Island.  (*Id.*)

Effective January 1, 2000, SORA was amended in several relevant respects.  Under the amended statute, plaintiff remained required to register as a sex offender annually for a period of ten years, (N.Y. Corr. Law § 168-h (McKinney 1999)), but no longer had the right to petition to be relieved of his duty to register until he had "been registered for a minimum period of ten years."  N.Y. Corr. Law § 168-o(1) (McKinney 1999).  However, the amended statute contained a new provision that permitted "[a]ny sex offender required to register or verify pursuant to this article [to] file a petition to modify the duration of registration and level of notification with the sentencing court . . . ."  *Id.* § 168-o(2) (McKinney 1999).

SORA was amended again as of January 18, 2006, and these new amendments further impacted plaintiff.  Specifically, the statute now provided that Level 2 sex offenders were required to register with the DCJS "annually for life."  N.Y. Corr. Law § 168-h(2) (McKinney 2006).  Nonetheless, the amended statute provided that a Level 2 sex offender "may be relieved of the duty to register and verify as provided by [Section 168-o(1)]."  *Id.*  That statutory

---

[4]      A sex offender required to "register" under SORA must provide the DCJS with personal identification information, including his name, date of birth, sex, race, height, weight, and home address.  The registrant is also required to submit a photograph and set of fingerprints.  N.Y. Corr. Law § 168-b.

provision, which had also been amended effective January 18, 2006, provided that a Level 2 sex offender "who has been registered for a minimum period of thirty years may be relieved of any further duty to register upon the granting of a petition for relief by the sentencing court."  N.Y. Corr. Law § 168-o(1).  Even after the 2006 amendments, however, SORA still allowed "[a]ny sex offender required to register or verify pursuant to this article [to] petition the sentencing court or the court which made the determination regarding the level of notification for an order modifying the level of notification."  *Id.* § 168-o(2).

The 2006 amendments also impacted Level 1 sex offenders.  While previous versions of the statute required Level 1 sex offenders to register annually for a period of ten years from the initial date of registration, the 2006 amendments increased the registration period for Level 1 sex offenders to twenty years from the initial date of registration.  N.Y. Corr. Law § 168-h(1) (McKinney 2006).  Moreover, although the 2006 amended version of SORA provided Level 2 sex offenders with an opportunity to petition for relief from the duty to register, Level 1 sex offenders were not given that same opportunity.  *See* N.Y. Corr Law § 168-o(1).[5]

*The* Woe v. Spitzer *Decision*

On August 5, 2008, Eastern District of New York District Judge Leonard D. Wexler issued a Memorandum & Order dismissing a complaint filed in the separate action of *Woe v.*

---

[5]    Plaintiff has not raised an *ex post facto* challenge to the increased duration of the registration periods that resulted from the SORA amendments.  Any such challenge would likely be foreclosed by the Second Circuit's decision that SORA's notification requirements and registration provisions "do not constitute punishment for purposes of the Ex Post Facto Clause." *Doe v. Pataki*, 120 F.3d 1263, 1284, 1285 (2d Cir. 1997); *see also Smith v. Doe*, 538 U.S. 84, 105-06 (2002) (finding Alaska Sex Offender Registration Act, which contains similar registration and reporting requirements, "is nonpunitive, and its retroactive application does not violate the *Ex Post Facto* Clause").

*Spitzer*, CV 07-1726.  (Compl., Ex. B.)[6]  There, the plaintiff, a Level 1 sex offender, had an initial registration date of January 21, 1996 and was required – under the original version of SORA – to register for a period of ten years.  On January 18, 2006, three days before that ten-year period was set to expire, SORA was amended to require Level 1 sex offenders to register for a twenty-year period.  (*Id.* at 2.)

In *Woe*, the plaintiff claimed that the 2006 SORA amendment "extending the registration period [for Level 1 sex offenders] from ten to twenty years has deprived [him] of his right to procedural due process" under the Fourteenth Amendment, because "the newly amended statutory scheme deprives him of the procedural right to petition for relief from the twenty year registration requirement."  (*Id.* at 2-3.)  In other words, plaintiff claimed that the amended SORA was "constitutionally deficient in that it fails to allow level one sex offenders to petition for relief from the twenty year registration requirement, while allowing for such petitions by level two and three sex offenders."  (*Id.* at 8.)

In examining plaintiff's procedural due process claim, the court concluded initially that although the plaintiff had "shown that SORA registration effects a protected liberty interest," (*id.* at 10), that "liberty interest is implicated by the fact of registration, and not the length of the registration period."  (*Id.* at 11.)  The court found that, even assuming *arguendo* that plaintiff did have a protected liberty interest in a ten-year registration period, "it is clear that the procedural amendments to SORA . . . provide Plaintiff with all of the process that is due in connection with the determination of the risk level to be assigned."  (*Id.* at 12.)  The court noted that the plaintiff

---

[6]     This action is entirely separate from the *Woe* matter, although the Court notes that plaintiff's counsel in this case also represented the plaintiff in *Woe*.  (*See* Compl., Ex. B at 1.)

had, in fact, taken advantage of those procedures by requesting a redetermination hearing, which led to his assignment to "the lowest level of risk." (*Id.*)

The court concluded its opinion by finding "[t]he argument that the statute is Constitutionally deficient because it does not allow Plaintiff to petition the court for relief from further registration [to be] flawed." (*Id.*)  The court noted that Section 168-o(1), which allows Level 2 sex offenders to petition the court to be relieved of a continuing duty to register after completing a thirty-year period of registration, does not explicitly provide Level 1 sex offenders the right to petition to shorten their period of registration.  (*Id.* (citing N.Y. Corr. Law § 168-o(1)).)  However, the court continued, SORA does provide "any sex offender" with "the statutory right to petition a court for an order modifying the level of notification," (*id.* (citing N.Y. Corr. Law § 168-o(2))), and that "[w]ith respect to level one offenders, an adjustment of the risk level below level one would necessarily relieve the offender from any registration requirement." (*Id.*)

***Plaintiff's Petition for "De-Classification"***

On December 30, 2008, plaintiff was notified by the State of Rhode Island Department of Corrections that "he no longer had a duty to register as a sex offender in that state, having maintained that registration for a period of ten years," but was warned that "his registration requirements in New York remained active." (Compl., Ex. D at 1.)  Thereafter, plaintiff filed a petition in Suffolk County Court seeking a "hearing to determine whether or not [he] should be de-classified as a Level 2 Sex Offender pursuant to Correction Law § 168-o(2)," and seeking an order "relieving [him] of the obligation[ ] and the duty to register . . . and report as a sex offender." (Compl., Ex. A (Not. of Petition at 1).)

Apparently recognizing that, pursuant to the current version of Section 168-o(1) of SORA

a Level 2 sex offender, such as plaintiff, could petition to be relieved of his registration duties only after he had been registered for at least thirty years, plaintiff focused his petition on Section 168-o(2).  Specifically, plaintiff cited the above-quoted language from *Woe*, which stated that Section 168-o(2) of SORA provides all sex offenders "the statutory right to petition a court for an order modifying the level of notification," and that "[w]ith respect to level one offenders, an adjustment of the risk level below level one would necessarily relieve the offender from any registration requirement." (Compl., Ex. A (Aff'n in Supp. of Pet. at ¶ 6).)  Relying on this language, plaintiff asked the court to "relieve him of the duty to register as a Level 2 offender in New York," (*id.* ¶ 8), presumably by adjusting his level of notification from Level 2 to a "risk level below level one" (*id.* ¶ 6.)

On December 21, 2009, Spota, in his capacity as Suffolk County District Attorney, submitted papers opposing plaintiff's petition.  (Compl. ¶ 14.)  First, Spota argued that as a Level 2 sex offender, plaintiff "has no statutory right to petition this Court to be relieved of his duty to register since he has not been registered for a minimum of thirty years." (Compl., Ex. C ¶ 4.)  Spota further argued that plaintiff's request to be "de-classified" and relieved of any duty to register as a sex offender had no support in SORA's language and was based entirely on an extrapolation of "mere[ ] dicta in a non-binding U.S. District Court Memorandum and Order in a federal civil rights action." (*Id.* ¶ 25.)  Spota concluded that "[a] reading of the statute reveals no mechanism by which a Level One sex offender may 'relieve' himself of his duty to register and as such the Petitioner's petition should be denied." (*Id.* ¶ 26.)

In an order dated May 20, 2010, County Court Judge Barbara Kahn held that although Section 168-o(2), by its terms, "allows 'any sex offender' to petition for modification of their

level of notification," the legislative history behind the statute makes clear that "the New York State Legislature intended to allow removal from the registry only after a minimum period of continuous registration," i.e., thirty years for Level 2 offenders and twenty years for Level 1 offenders.  (Compl., Ex. D at 2 (quoting N.Y. Sponsor's Memo., 2005 S.B. S6409).)  "Simply stated," Judge Kahn concluded, "there is no provision in the current form of the SORA statute which would allow for the relief requested here, that the defendant be 'de-classified' and relieved of any further duty to register in New York State."  (*Id.*)  On that point, Judge Kahn "respectfully disagree[d] with the dicta expressed in *Woe v. Spitzer*."  (*Id.*)  Judge Kahn did, however, find it appropriate to modify plaintiff's risk level from Level 2 to Level 1 because plaintiff had "fulfilled his statutory duties for the last twelve years without incident, is married and has maintained steady employment."  (*Id.*)  It does not appear that plaintiff appealed any portion of Judge Kahn's decision.

### *The Complaint in the Instant Action*

In his Complaint, plaintiff asserts that this Court, by virtue of Judge Wexler's decision in *Woe v. Spitzer*, "has found that [SORA] allows for a registrant to be de-classified as a sex offender for registration purposes (i.e., removed from a duty to register)."  (Compl. ¶ 17.) Plaintiff asserts that the express language of SORA permits "any sex offender" – including Level 1 sex offenders – to petition for a modification of their level of notification, N.Y. Corr. Law § 168-o(2), and that Judge Wexler interpreted this statutory provision to permit Level 1 sex offenders to seek "an adjustment of the risk level below level one," which would "necessarily relieve the offender from any registration requirement" (Compl., Ex. B at 12).  Plaintiff alleges that it is the "practice and policy" of the Suffolk County District Attorney's Office, the

Commissioner of the DCJS, "and the County Court of the State of New York" to "ignore and defy the Federal District Court['s] holding [in *Woe*]," and to "deny a registrant, including Plaintiff, the opportunity to be de-classified." (*Id.* ¶ 19.) Plaintiff contends that he has been denied his "due process right to apply for and state a petition for de-classification." (*Id.*) Plaintiff further asserts that he and other similarly-situated "registrants" have been denied "equal protection of law in not being enabled to apply for and state a petition for a downward classification below a Level One classification, and in an appropriate case to be de-classified." (*Id.*) Plaintiff has not alleged that, since being reassigned to Level 1 status, he has petitioned for (or been denied) a modification of his risk level to a level "lower than level one," as was contemplated by *Woe v. Spitzer*. Nor has he alleged that he attempted to file such a petition but was prevented from doing so.

## DISCUSSION

### I. Legal Standard

#### A. Applicable Legal Standard for Sovereign Immunity Arguments

The State Defendants have brought their motion pursuant to Rule 12(b)(1) and 12(b)(6), while Spota has moved under Rules 12(b)(5) and 12(b)(6). All of the defendants assert, as an initial matter, that the claims made against them are barred by the doctrine of sovereign immunity. In a recent decision, the Second Circuit declined to decide whether a motion to dismiss made on sovereign immunity grounds is properly reviewed as a challenge to the Court's subject matter jurisdiction (under Rule 12(b)(1)) or whether it is more appropriately addressed in the context of a Rule 12(b)(6) motion. *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (citing *Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998)

10

(stating "we have not decided" whether "Eleventh Amendment immunity is a matter of subject

matter jurisdiction")).  "The distinction is significant: while [the Court must] accept all factual

allegations in a complaint as true when adjudicating a motion to dismiss under [Rule] 12(b)(6),

[the Circuit has] held that, in adjudicating a motion to dismiss for lack of subject-matter

jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside

the pleadings, including affidavits." *Id.* (internal citations omitted).

Given this ambiguity, the Court will follow the lead of several other district courts within

this Circuit and apply the Rule 12(b)(6) standard in analyzing defendants' sovereign immunity

arguments. *See McMillan v. N.Y. State Bd. of Elections*, 2010 WL 4065434, at *3 (E.D.N.Y.

Oct. 15, 2010) (looking "only to the pleadings and to state and federal law" to resolve questions

regarding sovereign immunity); *Jude v. New York*, 2009 WL 928134, at *1 n.2 (S.D.N.Y. Mar.

30, 2009) (applying the Rule 12(b)(6) standard to sovereign immunity analysis).

The Supreme Court has clarified the pleading standard applicable in evaluating a motion

to dismiss under Rule 12(b)(6).  First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544

(2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957) that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46)

(internal quotation marks omitted).   Instead, to survive a motion to dismiss under *Twombly*, a

plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.*

at 570.

While a complaint attacked by a Rule 12(b)(6) motion to dismiss

11

> does not need detailed factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements
> of a cause of action will not do. Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged. The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain

factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

**B.      Rule 12(b)(5)**

Spota has also moved to dismiss the Complaint for insufficient service of process pursuant to Rule 12(b)(5).  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service."  *Commer v. McEntee*, 283 F. Supp. 2d 993, 997 (S.D.N.Y. 2003) (internal quotation marks omitted).  "If the court determines that [service] was insufficient, the court may, but is not required to, dismiss the action.  Alternatively, the court may grant leave to allow the plaintiff to cure the insufficiency."  *Sajimi v. City of New York*, 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011) (internal citations omitted).

## II.      *Sovereign Immunity*

The State Defendants and Spota argue that plaintiff's claims for monetary and injunctive relief against them in their official capacities should be dismissed as barred by the Eleventh Amendment.  (State Defs.' Mem. at 7; Spota's Mem. at 4.)

**A.      *Plaintiff's Claims Against the State of New York are Dismissed***

"Absent a waiver on the part of the state, or a valid congressional override, the eleventh amendment prohibits federal courts from entertaining suits by private parties against the states."  *Farid v. Smith*, 850 F.2d 917, 920-21 (2d Cir. 1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).  New York State has not waived its sovereign immunity from Section 1983

claims, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39-40 (2d Cir. 1977),

nor did Congress override that immunity by enacting Section 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (citing *Quern v. Jordan*, 440 U.S. 332, 350 (1979)).

Thus, because plaintiff's Section 1983 claims against New York State are barred by the

Eleventh Amendment, they are dismissed in their entirety.  *See Feingold v. New York*, 366 F.3d

138, 149 (2d Cir. 2004); *see also Jude*, 2009 WL 928134 at **3 & 4 (holding that, pursuant to

the Eleventh Amendment, New York State was immune from plaintiff's Section 1983 claims for

money damages and injunctive relief).

> ### B.    *Damages Claims Against Cuomo, Byrne, and Spota in Their Official Capacities*

The Eleventh Amendment also "bars the award of money damages against state officials

in their official capacities."  *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).  This is because

"[t]o the extent that a state official is sued for damages in his official capacity, such a suit is

deemed to be a suit against the state, and the official is entitled to invoke the Eleventh

Amendment immunity belonging to the state."  *Ying Jing Gan v. City of New York*, 996 F.2d 522,

529 (2d Cir. 1993).  Therefore, to the extent plaintiff's Section 1983 claims for money damages

are asserted against Cuomo, Byrne, and Spota in their official capacities, those claims are

dismissed.

> ### C.    *Claims for Injunctive Relief Asserted Against Cuomo, Byrne, and Spota in Their Official Capacities*

The Second Circuit has found that pursuant to the Supreme Court's decision in *Ex parte*

*Young*, 209 U.S. 123 (1908), there is:

> a limited exception to the general principle of sovereign immunity
> [that] allows a suit for injunctive relief challenging the
> constitutionality of a state official's actions in enforcing state law

14

> under the theory that such a suit is not one against the State, and
> therefore not barred by the Eleventh Amendment.

*Ford*, 316 F.3d at 354-55 (quoting *CSX Transp. v. N.Y. State Office of Real Prop. Servs.*, 306

F.3d 87, 98 (2d Cir. 2002)). Thus, "a plaintiff may sue a state official acting in his official

capacity – notwithstanding the Eleventh Amendment – for prospective, injunctive relief from

violations of federal law." *Rowland*, 494 F.3d at 95 (internal quotation marks omitted). "'In

determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit,

a court need only conduct a straightforward inquiry into whether the complaint alleges an

ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ford*,

316 F.3d at 355 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645

(2002)). However, "the inquiry into whether suit lies under *Ex parte Young* does not include an

analysis of the merits of the claim." *Verizon Md.*, 535 U.S. at 646.

      Here, plaintiff seeks an injunction "enjoining Defendants from refusing to consider on the

merits a petition by a SORA registrant for de-classification, and enjoining Defendants from

refusing to de-classify any registrant, including Plaintiff, on the erroneous basis that New York

State does not allow for de-classification of a registrant as a matter of law." (Compl. ¶ 34.)

Plaintiff has alleged that defendants have engaged in ongoing constitutional violations by

refusing to consider petitions by registered sex offenders, such as plaintiff, for "de-classification"

from the status of registered sex offender. Defendants do not make any arguments regarding the

applicability of the *Ex parte Young* exception. The Court concludes that plaintiff has pled a

claim for prospective injunctive relief against Cuomo, Byrne, and Spota that falls within the *Ex

parte Young* exception and, as such, those claims are not barred by the Eleventh Amendment.

**D.      *Damages Claims Against Cuomo, Byrne and Spota in their Individual Capacities***

Although the Eleventh Amendment prohibits plaintiff from bringing Section 1983 claims for damages against Cuomo, Byrne, and Spota in their official capacities, it does not bar plaintiff from asserting such claims against Cuomo, Byrne, and Spota in their individual capacities. *See Farid*, 850 F.2d at 921 ("[T]he eleventh amendment does not protect state officials from personal liability when their actions violate federal law, even though state law purports to require such actions."). Indeed, defendants do not attempt to assert a sovereign immunity defense to plaintiff's damages claims against Cuomo, Byrne, and Spota in their individual capacities, and the Court concludes that the Eleventh Amendment does not bar such claims.

**E.      *Conclusion Regarding Sovereign Immunity Arguments***

Plaintiff's Section 1983 claims are dismissed in their entirety as against New York State. Plaintiff's claims for money damages asserted against Cuomo, Byrne, and Spota in their official capacities are also dismissed. The Eleventh Amendment, however, does not bar plaintiff's claims for injunctive relief against Cuomo, Byrne, and Spota in their official capacities or his damages claims against those defendants in their individual capacities. For the reasons set forth below, however, these claims – while not barred by the Eleventh Amendment – ultimately cannot survive defendants' motions to dismiss.

**III.   *Plaintiff's Remaining Claims Asserted Against Cuomo***

As noted above, the Eleventh Amendment does not bar plaintiff's claims for injunctive relief against Cuomo in his official capacity or plaintiff's damages claims against Cuomo in his individual capacity. The State Defendants argue, however, that Cuomo is not a proper party to these remaining claims because "plaintiff has failed to show that the Governor has any

16

connection with the implementation and enforcement of SORA." (State Defs.' Mem. at 9.)

Plaintiff argues that the New York State Constitution requires the Governor to "'take care that

the laws are faithfully executed,' . . . [and] Mr. Cuomo's failure to ensure that the statutory

mandate in this case was followed falls squarely into his Constitutionally-mandated duties and

responsibilities as Governor." (Pl.'s Opp'n at 10-11.)

### A.    Plaintiff's Claims for Injunctive Relief are Dismissed

In defining whether a state official is a proper party to a suit seeking to enjoin the

enforcement of an allegedly unconstitutional statute, the Supreme Court has held: "[I]t is plain

that such officer must have some connection with the enforcement of the act, or else it is merely

making him a party as a representative of the state, and thereby attempting to make the state

party." *Ex parte Young*, 209 U.S. at 157. Thus, "[t]he fact that the state officer, by virtue of his

office, has some connection with the enforcement of the act, is the important and material fact,

and whether it arises out of the general law, or is specifically created by the act itself, is not

material so long as it exists." *Id.*; *see also Schulz v. Williams*, 44 F.3d 48, 61 n.13 (2d Cir. 1994)

("It is well-settled that a state official may properly be made a party to a suit seeking to enjoin the

enforcement of an allegedly unconstitutional act if that official plays some role in the

enforcement of the act.") (internal quotation marks and citation omitted).

The Second Circuit has not yet decided whether the general duty of the Governor, as set

forth in Article 4, Section 3 of the New York State Constitution, to "take care that the laws are

faithfully executed" is enough, "standing alone, [to] make[ ] the Governor a proper party in a suit

alleging that one of the laws of the State of New York is unconstitutional." *See Romeu v. Cohen*,

121 F. Supp. 2d 264, 272 (S.D.N.Y. 2000), *aff'd*, 265 F.3d 118 (2d Cir. 2001). However, "the

vast majority of courts to consider the issue have held . . . that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999) (collecting cases), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. Oct. 20, 1999) (unpublished), *cert. denied*, 531 U.S. 849 (2000); *see also United States v. New York*, 2007 WL 951576, at *3 (N.D.N.Y. Mar. 27, 2007) (finding governor was not a proper party when "it is clear that primary responsibility for implementation and enforcement of the statute rests with the New York State Legislature"); *Wang v. Pataki*, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001) (finding the general duty of the governor set forth in Article 4, Section 3 of the State Constitution was not enough, on its own, to make the governor "a necessary or proper party to every suit raising a challenge to the constitutionality of a state statute"); *Romeu*, 121 F. Supp. 2d at 272 (following the reasoning of *Warden v. Pataki* and concluding that Governor Pataki was not a proper party to an action challenging the constitutionality of federal and state election laws).

Plaintiff relies solely upon *Association of American Medical Colleges v. Carey*, 482 F. Supp. 1358, 1364 (N.D.N.Y. 1980), where the court found that the governor's general duty to "take care that the laws are faithfully executed" was a sufficient connection to the enforcement of the statute in question so as to make him a proper party to a suit challenging that statute's constitutionality. (Pl.'s Opp'n at 11.) That decision, however, "has been soundly rejected by subsequent courts," as described above, and is not persuasive authority for this Court. *See United States v. New York*, 2007 WL 951576 at *2. Accordingly, the Court concludes that Cuomo is not a proper party to the extent that plaintiff has asserted Section 1983 claims for injunctive relief against him in his official capacity. Those claims are dismissed.

18

**B.      Plaintiff's Damages Claims are Dismissed**

As for plaintiff's damages claims against Cuomo in his individual capacity, the Second

Circuit has recognized that although such claims are not precluded by the Eleventh Amendment,

"in most instances an official who complies with an unconstitutional state law will be protected

from personal liability by an applicable personal defense, such as absolute or qualified immunity

or lack of personal involvement." *Farid*, 850 F.2d at 923. "It is well-settled . . . that personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983." *Middleton v. City of New York*, 2006 WL 1720400, at *13 (E.D.N.Y.

June 19, 2006) (internal quotation marks omitted). Here, plaintiff has made no attempt to allege

Cuomo's personal involvement in any alleged constitutional violation. As such, plaintiff's

damages claims against Cuomo in his individual capacity are dismissed.

**IV.     Plaintiff's Remaining Claims Asserted Against Byrne**

Currently remaining are plaintiff's claims for injunctive relief against Byrne in his official

capacity and plaintiff's damages claims against Byrne in his individual capacity. The State

Defendants argue that Byrne, as Commissioner of DCJS, is not a proper party to this action

because he "does not enforce SORA or any other New York statutes." (State Defs.' Mem. at 11.)

In response, plaintiff asserts that Byrne, as Commissioner of DCJS, "headed the very agency

responsible for maintaining and operating a publicly accessible website . . . which contains a

searchable directory of sex offenders, and in some instances (depending on their Risk Level) their

photographs and addresses . . . ." (Pl.'s Opp'n at 11.) According to plaintiff, Byrne's role in

"head[ing] the agency charged with ensuring that convicted sex offenders are tracked,

categorized, and accessible to the public" makes him a proper party to this action. (*Id.* at 13.)

Pursuant to New York Correction Law § 168-b, the DCJS is responsible for establishing and maintaining a registry of sex offenders' personal information, photographs, fingerprints, and conviction information, and for making that information available to (and accessible by) various agencies and to the general public in a specified manner.  N.Y. Corr. Law § 168-b.  Nothing in the statute (or anywhere else, for that matter) authorizes the DCJS to make any determinations or recommendations as to a sex offender's offense level, the length of his required registration period, or whether his offense level should be modified.  Nor does the statute permit the DCJS to commence any proceedings against sex offenders who fail to comply with their registration requirements.  Thus, the Court concludes that plaintiff has failed to allege that Byrne, as the head of the DCJS, has "some connection" to the enforcement of SORA.  *Compare Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976) (finding Attorney General was not a proper party when he served merely "as a representative of the State's interest in asserting the validity of its statutes," but did not act as an "adverse party") *with Fed. Nat'l Mortg. Ass'n v. Lefkowitz*, 383 F. Supp. 1294, 1296-97 (S.D.N.Y. 1974) (finding Attorney General was a proper party because a plaintiff's failure to comply with the statute at issue could result in the Attorney General seeking injunctive relief against it).  Accordingly, plaintiff's claim for injunctive relief against Byrne in his official capacity is dismissed.  Further, given his failure to plead Byrne's personal involvement in any alleged constitutional deprivation, plaintiff's Section 1983 damages claim against Byrne in his individual capacity is also dismissed.

V.    *Plaintiff's Remaining Claims Asserted Against Spota*

     A.    *Plaintiff's Damages Claims Against Spota in his Individual Capacity are Dismissed*

With respect to plaintiff's claims for damages against him in his individual capacity, Spota argues that he is entitled to absolute immunity as a prosecutor.  (Spota's Mem. at 7-10.) Prosecutors are absolutely immune from liability in Section 1983 lawsuits based on "prosecutorial actions that are 'intimately associated with the judicial phase of the criminal process.'" *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Such immunity does not apply, however, "when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, [such as] investigative or administrative tasks." *Id.* at 342 (quoting *Imbler*, 424 U.S. at 431 n.33); *see also Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004) (finding that prosecutors enjoy absolute immunity "when they function as advocates for the state" but are entitled only to qualified immunity "when they perform investigative functions").

Here, plaintiff bases his claim against Spota on the Suffolk County District Attorney's opposition to his petition to Judge Kahn seeking de-classification as a Level 2 sex offender. (Compl. ¶ 14 & Ex. C.)  Plaintiff does not dispute, however, that Spota submitted this opposition in connection with his role as an advocate for the State of New York under circumstances "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430-31.  Although Spota's opposition papers were filed after plaintiff's conviction, plaintiff has cited no case law to suggest that such timing would impact the applicability of prosecutorial immunity. *Accord Warney v. Monroe County*, 587 F.3d 113, 122 (2d Cir. 2009) (finding that "absolute

immunity extends to prosecutors working on post-conviction collateral proceedings" because "[a] post-conviction petition often presents the same kinds of legal issues as the underlying criminal case, requires the same kinds of legal judgments, and calls upon the same kinds of advocacy skills and measures"); *Parkinson v. Cozzolino*, 238 F.3d 145, 151, 152 (2d Cir. 2001) (holding that "absolute immunity covers prosecutors' actions after the date of conviction while a direct appeal is pending" and finding that Supreme Court language on the subject has not delineated "the endpoint of immunity").  Accordingly, Spota is shielded from personal liability for plaintiff's Section 1983 damages claims, and those claims are dismissed.[7]

### B.      Spota is a "Proper Party" to Plaintiff's Claims for Injunctive Relief

Unlike Cuomo or Byrne, Spota, as the head of the Suffolk County District Attorney's Office, certainly has "some connection" to the enforcement of SORA.  Section 168-t of the New York Correction Law provides that any failure by a sex offender to register "in the manner and within the time periods provided for" by SORA could result in his prosecution for criminal misdemeanor or felony charges.  N.Y. Corr. Law § 168-t.  Spota does not dispute that his office had "some connection" to the enforcement of SORA and, as such, the Court finds that he is a proper party to plaintiff's claims for injunctive relief against him in his official capacity.

### C.      Service of Process

Spota asserts that the Complaint should be dismissed as against him based upon plaintiff's failure to properly serve process.  (Spota's Mem. at 10.)  Rule 4(e) provides that

---

[7]      Prosecutorial immunity does not extend to claims for prospective injunctive relief. *See Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736 (1980) ("Prosecutors enjoy absolute immunity from damages liability but they are natural targets for § 1983 injunctive suits since they are the state officers who are threatening to enforce and who are enforcing the law.") (internal citations omitted).

service upon an individual is made by either (1) "following state law for serving a summons," or (2) by delivering a copy of the summons and complaint to the individual personally, by leaving a copy "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or by delivering a copy "to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e).[8]

On December 2, 2011, plaintiff served a copy of the Summons and Complaint upon Jeannine Hughes, a "Sr. Clerk" authorized to accept service for Christine Malafi, who was the Suffolk County Attorney at that time. (Docket No. 2.) It is undisputed that plaintiff did not serve Spota personally, and did not leave a copy of the Summons or Complaint at his home. *See* Fed. R. Civ. P. 4(e)(2)(A), (B). Nor did he serve the Summons and Complaint upon Spota using any of the methods outlined in N.Y. C.P.L.R. § 308, the applicable state law that governs "[p]ersonal service upon a natural person."

New York law also provides, however, that "[p]ersonal service on a state officer sued solely in his official capacity" can be made by: "(1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by subdivision one of this section." N.Y. C.P.L.R. §

---

[8]     Spota takes the position that Rule 4(j)(2), which covers service of process upon a state, municipal corporation, or other state-created governmental organization applies here. (*See* Spota's Mem. at 10.) The issue at hand, however, is the sufficiency of plaintiff's service on Spota personally – not the District Attorney's Office itself. "Separate rules govern service upon state agencies and upon individuals [employed by those state agencies]." *Shuster v. Nassau County*, 1999 WL 9847, at *1 (S.D.N.Y. Jan. 11, 1999).

307(2).[9]  The Suffolk County Attorney is not the "chief executive officer" of the Suffolk County

District Attorney's Office and, thus, plaintiff's service of process upon the Suffolk County

Attorney does not comply with the first method of service described in Section 307(2).

Moreover, it is clear that plaintiff did not effectuate service in accordance with the second

method described in that section.

Thus, plaintiff's service of process upon Spota is proper only if the County Attorney is

"an agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P.

4(e)(2)(C).  Plaintiff argues that he has complied with this rule by serving "the County Attorney,

who is Mr. Spota's lawyer."  (Pl.'s Opp'n at 9.)  This, however, is "not sufficient under the

Federal Rules and New York law unless the attorney is authorized by appointment or by law to

receive service of process."  *Shuster*, 1999 WL 9847 at *3 (collecting cases).  Plaintiff has not

alleged or offered any evidence that would suggest that the County Attorney is "authorized by

appointment or by law" to accept service of process on behalf of the District Attorney and has

not, therefore, satisfied his burden of proving that his attempted service of process on Spota was

sufficient.

More than 120 days have passed since the Complaint has been filed.  Because plaintiff

has failed to serve Spota with the Summons and Complaint within that 120-day window, as

required by Rule 4(m), "the question becomes whether the complaint must be dismissed against

[Spota] or whether plaintiff[ ] should be provided with an extension of time to effect proper

service."  *Fileccia v. City of New York*, 2011 WL 4975313, at *3 (E.D.N.Y. Sept. 23, 2011).

---

[9]        Subdivision one provides that personal service upon the state is made "by
delivering the summons to an assistant attorney-general at an office of the attorney-general or to
the attorney-general within the state."  N.Y. C.P.L.R. § 307(1).

Rule 4(m) permits the Court to dismiss an action if service is not made in a timely manner, but also provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The Court's determination as to whether plaintiff has shown good cause constitutes an exercise of its discretion. *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007) (internal citations omitted). "However, good cause or excusable neglect is generally found only in exceptional circumstances where plaintiff's failure to serve process in a timely manner was the result of circumstances beyond his control." *Fileccia*, 2011 WL 4975313 at *4 (internal quotation marks and alteration omitted). "An attorney's ignorance of the rules, inadvertence, neglect, or mistake do not constitute good cause." *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003). Plaintiff has not made any attempt to show the existence of "good cause." Accordingly, the Court exercises its discretion to dismiss plaintiff's remaining claim for injunctive relief against Spota in his official capacity.

## CONCLUSION

For the reasons set forth above, the motions to dismiss the Complaint filed by the State Defendants and Spota are granted. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
      January 16, 2013                                         _/s/_____
                                                          Denis R. Hurley
                                                          Unites States District Judge